LATHAM & WATKINS LLP
Benjamin J. Hanelin (S.B. No. 237595)
Email: benjamin.hanelin@lw.com
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

Richard P. Bress (D.C. Bar No. 457504)
(application for *pro hac vice* pending)
Email: richard.bress@lw.com
Andrew D. Prins (D.C. Bar No. 998490)
(application for *pro hac vice* pending)
Email: andrew.prins@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004-1304
Telephone:  (202) 637-3317
Facsimile:  (202) 637-2201

Additional Counsel on Signature Page

Attorneys for Plaintiff Residents for The
Beverly Hills Garden & Open Space Initiative

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Residents for The Beverly Hills Garden & Open Space Initiative, | Case No. 16-5532 |
| *Plaintiff*, | |
| vs. | **ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| The City of Beverly Hills, | |
| *Defendant*. | |

**PRELIMINARY STATEMENT**

1.     Plaintiff urgently seeks this Court's protection from an unconstitutional ordinance that would severely burden its efforts to communicate with voters regarding a pending ballot initiative.  This case is about "core political speech" under the First Amendment.  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995).  "No form of speech is entitled to greater constitutional protection*." Id.*

2.     Plaintiff, Residents for The Beverly Hills Garden & Open Space Initiative, is sponsoring a ballot initiative to amend a city zoning plan for the benefit of both the citizens of Beverly Hills and private investors (the "Initiative").  Plaintiff collected the requisite number of signatures to place the Initiative on the ballot and, on July 19, 2016, the City Council of the City of Beverly Hills voted to submit the Initiative to the voters on the November 2016 ballot.

3.     To persuade voters to support the Initiative, Plaintiff is in the midst of preparing to launch a large media campaign involving mailers, radio ads, and television ads about the Initiative's benefits.  But, through a local ordinance, the Defendant City of Beverly Hills is now demanding that Plaintiff set aside extraordinarily large and prominent portions of its advertising for a government-prescribed message, including a subjective description of the Initiative set by a local government official.  This government message is so large that Plaintiff is now completely foreclosed from using typical forms of advertising media.  And what avenues to speak remain are now so burdened that they are essentially worthless for persuading voters.

4.     Specifically, the City seeks to compel Plaintiff to include the following lengthy statement in its entirety in *14-point font* on all written advertisements, to read the same full disclaimer aloud in any audio communications (including telephone calls), and to devote a remarkable *50%* of

1

any video to displaying the disclaimer:

> **This communication is presented and paid for by Residents for The Beverly Hills Garden & Open Space Initiative, with major funding by Oasis West Realty LLC / The Beverly Hilton. These donors are listed in descending order of contribution amount. More current information regarding the sources of funding for this election campaign is available at www.beverlyhills.org. ("An initiative measure to amend the Beverly Hilton Specific Plan to combine the 8 story Wilshire condominium building with the 18 story Santa Monica condominium building resulting in one 26 story building with additional height and to replace the Wilshire building with 1.7 acres of garden open space that is generally open to the public subject to reasonable restrictions determined by the property owner.")**

5.     The government-prescribed message goes far beyond the sort of minimally burdensome disclosures or disclaimers sometimes required by campaign regulations—*i.e.,* a short statement disclosing the origins of funding for an ad. Here, the ordinance mandates that Plaintiff include a city employee's subjective "title" for the Initiative (the 64-word sentence appearing in quotes at the end of the block quote above), but provides absolutely no standard by which that title must be set. As a result of the subjective title requirement and other text required by law, the required language is so voluminous that political advocacy—the very point of the constitutionally-protected advertisements——becomes entirely ineffective. For example, the government's mandated message completely prevents Plaintiff from utilizing standard 30-second radio advertisements, because the message itself takes longer than that to say—even when read by a professional. The government's message also prevents Plaintiff from using standard 4x6 direct mail post cards, because its text consumes *two thirds of the space on the main side of the card*, leaving little room for any other

2

1  message.  The ordinance and its attendant risk of criminal liability are, right now,

2  significantly chilling Plaintiff's core political speech

3        6.     The ordinance cannot be squared with the First Amendment's strong

4  protections for political speech.  The ordinance's requirement to include a

5  subjective "title" on the face of political communications is facially invalid:  it is

6  subject to strict scrutiny because it is not a limited disclosure of purely factual

7  information, and it fails that scrutiny because it is not narrowly tailored to achieve

8  any compelling government interest.  And taken as a whole, the government's

9  compelled message is so burdensome that, as applied to Plaintiff, the ordinance

10  also fails under the "exacting scrutiny" standard applicable to purely factual

11  disclosures, because the significant burdens it imposes outweigh the

12  government's minimal interest in forcing Plaintiff to communicate its message.

13        7.     Plaintiff respectfully requests that the Court issue a temporary

14  restraining order and preliminary injunction barring application of the ordinance

15  to Plaintiff, and barring any application at all of the ordinance's subjective title

16  requirement.  This interim relief is warranted because of the exigent

17  circumstances presented by this dispute; each day that Plaintiff is foreclosed from

18  advocating its position, the likelihood that the voters will approve the Initiative is

19  diminished.

20  **PARTIES**

21        8.     Plaintiff, Residents for the Beverly Hills Garden & Open Space

22  Initiative, is a ballot measure committee organized and registered in accordance

23  with California's Political Reform Act, Cal. Gov't Code §§ 81000 *et seq.*

24  Plaintiff is a coalition of businesses and individuals.  Its purpose is to educate the

25  public about the benefits of, and to advocate for, the adoption and

26  implementation of the Initiative.

27        9.     Defendant City of Beverly Hills is a municipal corporation organized

28  and existing under and by virtue of the laws of the State of California.

## JURISDICTION AND VENUE

10.     This lawsuit alleges violations of Plaintiff's rights under the First Amendment of the United States Constitution and 42 U.S.C. § 1983. Accordingly, this Court has "federal question" jurisdiction over Plaintiff's claims by virtue of 28 U.S.C. § 1331.

11.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to Plaintiff's claims occurred in Beverly Hills, which is located within the Central District.

12.     Plaintiff has standing to bring this pre-enforcement challenge, which is also ripe for judicial resolution.  The Supreme Court has long recognized that "[w]hen [a] plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citation omitted).  Such a credible threat is presented by the mere existence of a statute that is "recent and not moribund," *Doe v. Bolton*, 410 U.S. 179, 188 (1973), and that the government has not "disavowed any intention" of enforcing, *Babbitt*, 442 U.S. at 302.

## GENERAL ALLEGATIONS

### *The Initiative*

13.     In 2008, the Beverly Hills City Council approved the Beverly Hilton Specific Plan (the "Specific Plan"), authorizing the construction of a new 170-room hotel and two residential buildings (an 8-story building and an 18-story building, with a total of 110 condominiums) on an approximately 8.97-acre property adjacent to the iconic Beverly Hilton.

14.     Several implementing actions—including a General Plan amendment necessary to effectuate the Specific Plan—were approved at the same time.  The

4

General Plan amendment was the subject of a referendum, and on November 4, 2008, the registered voters of the City of Beverly Hills approved the General Plan amendment via Measure H, allowing the Specific Plan to be implemented.

15.    Construction of the new hotel is underway on the property and is expected to be completed in 2017.  Construction of the residential buildings has not yet commenced.

16.    The primary purpose of the Initiative is to amend the Specific Plan to eliminate the approved 8-story residential building and consolidate it with the approved 18-story residential building (resulting in a single 26-story residential building), and provide for a new garden in place of the eliminated building.  The Initiative provides that the garden "shall generally be open to the public, hotel guests, event guests and residents, subject to reasonable rules, regulations, and security, including hours of use, as determined by the owner of the property." The Initiative also discloses that "[t]he garden and open space may be used for private events from time to time, as determined by the property owner."

17.    Raising public awareness and support is always an import aspect of securing passage of a ballot initiative.  To that end, Plaintiff was engaged in an extensive media campaign to get the Initiative on the ballot, and wants to make extensive use of print, radio, and television advertising now to convince voters to ultimately approve the Initiative.

18.    A primary purpose of these advertisements is to inform the public about the benefits of the Initiative, in particular the new garden that will be generally open to the public.

19.    Plaintiff obtained the necessary number of signatures from Beverly Hills voters to qualify the Initiative for the ballot.  On July 19, 2016, the City Council voted to submit the Initiative to the voters.

### The Beverly Hills Ordinance

20.    California's Political Reform Act contains certain disclosure and

5

1   disclaimer requirements that apply to all advertisements sent by a committee
2   formed to support or oppose a ballot measure (whether the measure is state or
3   local).  Cal. Gov't Code §§ 84504, 84507.  The law permits local jurisdictions to
4   impose their own additional requirements.

5        21.    The City of Beverly Hills has enacted its own ordinance which goes
6   far beyond state law requirements.  Beverly Hills Muni. Code §§ 1-8-1 *et. seq.*
7   As relevant here, the ordinance mandates significant additional government-
8   prescribed content on each "advertisement" for or against a "City Ballot
9   Measure." *Id.* § 1-8-5.

10       22.    The ordinance defines "advertisement" as "[a]ny general or public
11  communication, including printed, mailed, telephonic, automated, and electronic
12  communications, which is authorized and paid for by a ballot measure committee
13  for the purpose of supporting or opposing a city ballot measure.  The term
14  'advertisement' does not include personal communications between individuals,
15  such as personal telephone calls made by an individual to another individual, one
16  to one conversations, debates or other informational presentations by an
17  individual, but shall include, without limitation, automated telephone calls to
18  voters." *Id.* § 1-8-2.  A "City Ballot Measure" is defined as "[a]ny initiative,
19  referendum or city council sponsored measure that is submitted solely to the
20  voters of the city of Beverly Hills." *Id.*

21       23.    The ordinance compels numerous statements that, when considered
22  together with state law requirements, total *120 words*.

23       24.    In particular, the ordinance requires that every such advertisement
24  disclose, in descending order by contribution amount, the identity of any person
25  or entity who contributes, either in cash or in kind, over $10,000.  *Id.* § 1-8-5 (C).

26       25.    For print, video, or email advertisements, the following message
27  must appear in 14-point font:

28            This communication is presented by [name of committee]

6

1    with major funding provided by [legal name of donors in
2    descending order of amount of contribution]. These
3    donors are listed in descending order of contribution
4    amount. More current information regarding the sources
5    of funding for this election campaign is available at
6    www.beverlyhills.org.

7  *Id.* § 1-8-5 (E).

8      26.    Importantly, the ordinance also provides that every advertisement
9  "shall contain the official title of the city ballot measure, as provided by the city
10  attorney."   *Id.* § 1-8-5 (F).   The ordinance does not define "official title," or
11  provide any standard for the City Attorney to apply when drafting the "official
12  title."

13     27.    In effect, this "title" provision gives the City Attorney unfettered
14  discretion to dictate the content and length of the government's prescribed
15  message.   There is nothing to stop the City Attorney from, for example, requiring
16  a title that pejoratively characterizes the initiative, or that is 2,000 words in length.

17     28.    Here, the City Attorney set the following lengthy "official title" for
18  the Initiative:  "An initiative measure to amend the Beverly Hilton Specific Plan
19  to combine the 8 story Wilshire condominium building with the 18 story Santa
20  Monica condominium building resulting in one 26 story building with additional
21  height and to replace the Wilshire building with 1.7 acres of garden open space
22  that is generally open to the public subject to reasonable restrictions determined
23  by the property owner."

24     29.    When an advertisement is in audio format only (radio, telephonic,
25  etc.), the government's entire message must be read aloud "so as to be clearly
26  audible and understood by the intended public and otherwise appropriately
27  conveyed for the hearing impaired."   *Id.* § 1-8-5 (E).   All video advertisements
28  (including television) must dedicate *50%* of their time to displaying the

7

1  disclaimer. *Id.*

2      30.    The ordinance provides for significant criminal penalties, including

3  potential jail sentences for responsible individuals. *Id.* § 1-8-7 (B). The

4  ordinance imposes potential joint and several liability on a committee and its

5  "treasurer, any principal officers, and any person primarily responsible for the

6  preparation of any advertisement." *Id.* § 1-8-7 (A).

7      31.    The ordinance also contains a citizen-enforcement provision which

8  permits any resident of Beverly Hills to enforce the ordinance civilly. *Id.* § 1-8-7

9  (C).

10                           ***Severe Burdens Imposed By Disclaimer***

11      32.    As a result of the ordinance, Plaintiff's advertisements must now

12  contain the following statement:

13          **This communication is presented and paid for by**

14          **Residents for The Beverly Hills Garden & Open**

15          **Space Initiative, with major funding by Oasis West**

16          **Realty LLC / The Beverly Hilton. These donors are**

17          **listed in descending order of contribution amount.**

18          **More current information regarding the sources of**

19          **funding for this election campaign is available at**

20          **www.beverlyhills.org. ("An initiative measure to**

21          **amend the Beverly Hilton Specific Plan to combine**

22          **the 8 story Wilshire condominium building with the**

23          **18 story Santa Monica condominium building**

24          **resulting in one 26 story building with additional**

25          **height and to replace the Wilshire building with 1.7**

26          **acres of garden open space that is generally open to**

27          **the public subject to reasonable restrictions**

28          **determined by the property owner.")**

33.     Upon the Beverly Hills City Council's vote on Tuesday, July 19, 2016, the ordinance became applicable to Plaintiff's advertisements.  As a result, the government's massive message must now appear in all of Plaintiff's advertisements, substantially limiting Plaintiff's ability to engage in advertising activities and foreclosing it from using some of the most common methods of campaign advertising all together.

34.     For example, application of the ordinance in this fashion will eliminate Plaintiff's ability to run radio ads.

35.     Radio ads are among the most common forms of political communication used in municipal politics, and they are typically purchased and sold as 30-second spots.  That duration is particularly effective because it facilitates cost-effective repetition.

36.     Plaintiff wants to make use of 30-second ads and had planned to make them a significant component of its advertising strategy going forward.

37.     However, reciting the required disclaimer with the clarity that the ordinance requires is impossible in 30 seconds, even for radio professionals. Thus, airing its planned 30-second ads would require Plaintiff to purchase ads of *at least* 60 seconds.  This would significantly increase cost.  As a result, the ordinance will allow Plaintiff to use significantly less total radio advertising time than it intended and achieve far less repetition, greatly inhibiting Plaintiff's ability to communicate its message.

38.     Plaintiff's ability to advertise in print is also severely burdened. Print ads are produced in a variety of sizes, and among the most common is a 4 x 6 inch post card which is sent to voters via direct mail.  Such post cards are a staple of advertising campaigns in municipal elections, and Plaintiff had planned to make them an essential component of its campaign going forward.

39.     As with 30-second radio ads, however, the ordinance essentially renders post cards useless.  Printing the full disclaimer in the 14-point font that

9

the ordinance requires would occupy roughly *two thirds* of the space on the main side of the card.  And because addressing information appears on the reverse side, there would be little, if any, space left to communicate a message—much less to do so effectively.

40.   Application of the ordinance also substantially burdens television ads.  Like radio ads, television ads are typically purchased and sold in 30-second spots.  Plaintiff made use of television ads at earlier stages of this campaign, and wants to continue to do so.   Television ads are particularly important in the context of *this* campaign, as they represent the best way for Plaintiff to communicate a visual representation of the proposed land use changes to the voters, which Plaintiff believes will go a long way towards enlisting public support.

41.   Complying with the ordinance would force Plaintiff to display the required disclaimer *over* the visual content of its television advertisements for 15 of the advertisements' 30 total seconds (*i.e.*, half of the airtime purchased by Plaintiff).  To comply with the ordinance's font size requirements, the disclaimer would have to occupy much of the screen, greatly interfering with the intended visual message.

42.   As a result of these burdens, Plaintiff has severely curtailed its advertising efforts.  For example, Plaintiff is currently holding off on producing and running television and radio ads, and is not sending out any additional mailers.   If the ordinance is enjoined, Plaintiff will immediately begin implementing its advertising strategy in these mediums.

43.   The election is on November 8, 2016, just a few months away. Every day that Plaintiff's political speech is chilled diminishes the likelihood that Plaintiff will be able to successfully reach enough voters to persuade them to vote in favor of the Initiative.

## FIRST CLAIM FOR RELIEF

**(As-Applied Violation of the First Amendment of the United States Constitution and 42 U.S.C. § 1983:  Exacting Scrutiny)**

44.    The allegations of paragraphs 1 through 43 above are incorporated by reference as though fully set forth herein.

45.    The severely burdensome government-prescribed message mandated by the ordinance constitutes a clear "as applied" violation of the First Amendment to the United States Constitution.

46.    There is no valid constitutional justification for the serious burden and encroachment on Plaintiff's protected political speech.  Countless state and local governments across the country require disclosures or disclaimers on political advertising, but do so without such government messages occupying such extensive portions of the advertisements.

## SECOND CLAIM FOR RELIEF

**(Facial and As-Applied Violation of the First Amendment of the United States Constitution and 42 U.S.C. § 1983: Strict Scrutiny)**

47.    The allegations of paragraphs 1 through 43 above are incorporated by reference as though fully set forth herein.

48.    The ordinance's "official title" requirement operates as a prior restraint on speech, because ballot measure committees subject to the ordinance cannot engage in political advertising until the City Attorney sets an official ballot title.

49.    Because the ordinance sets no objective standard to limit the City Attorney's discretion in drafting the official title, the ordinance does not compel ballot measure committees to repeat purely factual and non-controversial information.  Instead, it compels them to repeat Defendant's subjective message. The ordinance's title requirement is therefore subject to strict scrutiny.   The ordinance's title requirement fails strict scrutiny because it is not narrowly

11

1   tailored to serve any compelling government interest.

2       50.     As applied to Plaintiff, the ordinance's title requirement is invalid

3   under the First Amendment to the U.S. Constitution.  And because a substantial

4   number, if not all, applications of the title requirement would be unconstitutional,

5   the ordinance's title requirement is overbroad and therefore facially invalid as

6   well.

7                          **<u>PRAYER FOR RELIEF</u>**

8   WHEREFORE, Plaintiff prays as follows:

9       1.      For immediate issuance of a temporary restraining order prohibiting

10  the City, and its agents, representatives, employees, and all persons aiding the

11  City or acting pursuant to its direction and control, from taking any steps to

12  enforce Beverly Hills Municipal Code §§ 1-8-5 (C)-(F) against Plaintiff

13  (including its treasurer, principal officers, and persons primarily responsible for

14  the preparation of its advertisements) with respect to advertisements concerning

15  the Initiative, and from taking any steps to enforce Beverly Hills Municipal Code

16  § 1-8-5 (F) against any person or entity;

17      2.      For a preliminary injunction prohibiting the City, and its agents,

18  representatives, employees, and all persons aiding the City or acting pursuant to

19  its direction and control, from taking any steps to enforce Beverly Hills Municipal

20  Code §§ 1-8-5 (C)-(F) against Plaintiff (including its treasurer, principal officers,

21  and persons primarily responsible for the preparation of its advertisements) with

22  respect to advertisements concerning the Initiative, and from taking any steps to

23  enforce Beverly Hills Municipal Code § 1-8-5 (F) against any person or entity;

24      3.      For a permanent injunction prohibiting the City, and its agents,

25  representatives, employees, and all persons aiding the City or acting pursuant to

26  its direction and control, from taking any steps to enforce Beverly Hills Municipal

27  Code §§ 1-8-5 (C)-(F) against Plaintiff (including its treasurer, principal officers,

28  and persons primarily responsible for the preparation of its advertisements) with

1    respect to advertisements concerning the Initiative, and from taking any steps to

2    enforce Beverly Hills Municipal Code § 1-8-5 (F) against any person or entity;

3         4.    For a declaration under 28 U.S.C. § 2201(a) that Beverly Hills

4    Municipal Code §§ 1-8-5 (C)-(F) violates the First Amendment to the United

5    States Constitution, and 42 U.S.C. § 1983, as-applied to Plaintiff.

6         5.    For a declaration under 28 U.S.C. § 2201(a) that Beverly Hills

7    Municipal Code § 1-8-5 (F) facially violates the First Amendment to the United

8    States Constitution, and 42 U.S.C. § 1983.

9         6.    For costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C.

10   § 1988(b); and

11        7.    For such other relief that the Court deems just and equitable.

12   Dated:  July 25, 2016                Respectfully submitted,

13                                        _____/s/ Benjamin Hanelin_____

14

15                                        LATHAM & WATKINS LLP
                                          Benjamin Hanelin (S.B. No. 237595)

16                                        Email: benjamin.hanelin@lw.com
                                          355 South Grand Avenue

17                                        Los Angeles, CA 90071-1560
                                          Telephone:  (213) 485-1234

18                                        Facsimile:  (213) 891-8763

19

20                                        Richard P. Bress (D.C. Bar No. 457504)
                                          (application for *pro hac vice* pending)

21                                        Email: richard.bress@lw.com
                                          Andrew D. Prins (D.C. Bar No. 998490)

22                                        (application for *pro hac vice* pending)

23                                        Email: andrew.prins@lw.com
                                          555 11th Street NW, Suite 1000

24                                        Washington, DC  20004

25                                        Telephone: (202) 637-3317
                                          Facsimile:  (202) 637-2201

26

27                                        NIELSEN MERKSAMER

28                                        PARRINELLO  GROSS & LEONI LLP

                                             13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher E. Skinnell (S.B. No. 227093)
Email: cskinnell@nmgovlaw.com
Sean P. Welch (S.B. No. 227101)
Email: swelch@nmgovlaw.com
2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
Telephone:  (415) 389-6800
Facsimile:  (415) 388-6874

*Attorneys for Plaintiff*

14