1 | LATHAM & WATKINS LLP
Benjamin J. Hanelin (S.B. No. 237595)
2 | Email: benjamin.hanelin@lw.com
3 | 355 South Grand Avenue
Los Angeles, CA 90071-1560
4 | Telephone: (213) 485-1234
Facsimile: (213) 891-8763
5 |
6 | Richard P. Bress (D.C. Bar No. 457504)
(application for *pro hac vice* pending)
7 | Email: richard.bress@lw.com
Andrew D. Prins (D.C. Bar No. 998490)
8 | (application for *pro hac vice* pending)
Email: andrew.prins@lw.com
9 | 555 Eleventh Street NW, Suite 1000
Washington, DC 20004-1304
10 | Telephone: (202) 637-3317
Facsimile: (202) 637-2201
11 |
12 | Additional Counsel on Signature Page
13 |
14 | *Attorneys for Plaintiff Residents for The*
*Beverly Hills Garden & Open Space Initiative*
15 |
16 |
17 | IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18 Residents for The Beverly Hills | ) Case No. 16-5532 |
| 19 Garden & Open Space Initiative, | ) |
| | ) |
| 20 *Plaintiff*, | ) |
| | ) MEMORANDUM OF POINTS AND |
| 21 vs. | ) AUTHORITIES IN SUPPORT OF |
| | ) APPLICATION FOR TEMPORARY |
| 22 The City of Beverly Hills, | ) RESTRAINING ORDER/ORDER TO |
| 23 | ) SHOW CAUSE AND PRELIMINARY |
| *Defendant*. | ) INJUNCTION |
| 24 | ) |
| 25 _____ | ) |

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

    A.    The Initiative ...................................................................................... 3

    B.    The City's Ordinance And Its Government-Mandated Message........................................................................................... 5

ARGUMENT........................................................................................................ 8

I.    PLAINTIFF IS LIKELY TO SUCCEED ON ITS CLAIM THAT THE ORDINANCE VIOLATES THE FIRST AMENDMENT ............................................................................................ 9

    A.    The Ordinance Is Invalid As Applied Under Exacting Scrutiny Because It Severely Burdens Plaintiff's Political Speech ............................................................................................ 10

    B.    The Ordinance's Subjective "Title" Requirement Independently Fails Strict Scrutiny.................................................. 16

II.    THE REMAINING EQUITABLE FACTORS WEIGH HEAVILY IN PLAINTIFF'S FAVOR........................................................ 20

CONCLUSION.................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACLU of Nev. v. Heller,*
378 F.3d 979 (9th Cir. 2004) ............................................................... 11

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
No. 13-16639, 2016 WL 3082698 (9th Cir. June 1, 2016) ................................. 9

*Brown v. Cal. Dep't of Transp.,*
321 F.3d 1217 (9th Cir. 2003) .............................................................. 21

*Buckley v. Valeo,*
424 U.S. 1 (1976) .......................................................................... 11

*Chula Vista Citizens for Jobs & Fair Competition v. Norris,*
782 F.3d 520 (9th Cir. 2015) (en banc) .................................................... 11

*Citizens Against Rent Control v. City of Berkeley, Cal.,*
454 U.S. 290 (1981) ....................................................................... 11

*Citizens United v. Fed. Election Comm'n,*
558 U.S. 310 (2010) ................................................................... 10, 11

*City of Lakewood v. Plain Dealer Publ'g Co.,*
486 U.S. 750 (1988) ....................................................................... 19

*CTIA–The Wireless Ass'n v. City & Cnty. of S.F.,*
494 Fed. App'x. 752 (9th Cir. 2012) ....................................................... 18

*CTIA-The Wireless Association v. City & County of San Francisco,*
827 F. Supp. 2d 1054 (N.D. Cal. 2011), *aff'd* 494 Fed. Appx. 752
(9th Cir. 2012) ........................................................................... 16

*Elrod v. Burns,*
427 U.S. 347 (1976) ....................................................................... 21

*Entertainment Software Association v. Blagojevich,*
469 F.3d 641 (7th Cir. 2006) .............................................................. 16

*Family PAC v. McKenna,*
685 F.3d 800 (9th Cir. 2011) .......................................................... 10, 11

ii

*Farris v. Seabrook,*
   677 F.3d 858 (9th Cir. 2012) ................................................................. 21

*First Nat'l Bank of Bos. v. Bellotti,*
   435 U.S. 765 (1978) ............................................................................... 22

*Frudden v. Pilling,*
   742 F.3d 1199 (9th Cir. 2014) ............................................................... 19

*Gaudiya Vaishnava Soc'y v. City & Cnty. of S.F.,*
   952 F.2d 1059 (9th Cir. 1990), *as amended on denial of reh'g*
   (Dec. 26, 1991) ...................................................................................... 19

*Human Life of Wash., Inc. v. Brumsickle,*
   624 F.3d 990 (9th Cir. 2010) ................................................................. 15

*Ibanez v. Florida Department of Business & Professional Regulation,*
   512 U.S. 136 (1994) ......................................................................... 16, 17

*Klein v. City of San Clemente,*
   584 F.3d 1196 (9th Cir. 2009) ............................................................... 21

*McIntyre v. Ohio Elections Comm'n,*
   514 U.S. 334 (1995) ..................................................................... 1, 9, 11

*Mills v. Ala.,*
   384 U.S. 214 (1966) ............................................................................... 22

*National Association for Gun Rights, Inc. v. Motl,*
   --- F. Supp. 3d ----, 2016 WL 3003201 (D. Mont. May 23, 2016) ................... 20

*Peel v. Attorney Registration & Disciplinary Comm'n of Ill.,*
   496 U.S. 91 (1990) ................................................................................. 15

*PG&E v. Pub. Utils. Comm'n,*
   475 U.S. 1 (1986) .............................................................................. 18, 19

*Public Citizen, Inc. v. Louisiana Attorney Disciplinary Board,*
   632 F.3d 212 (5th Cir. 2011) ................................................................. 17

*Reed v. Town of Gilbert,*
   135 S. Ct. 2218 (2015) .......................................................................... 18

iii

*Riley v. Nat'l Fed'n of the Blind*,
    487 U.S. 781 (1988) .................................................................. 17, 18

*Sammartano v. First Judicial Dist. Court*,
    303 F.3d 959 (9th Cir. 2002) ..................................................... 21, 22

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ........................................................... 9

*Thalheimer v. City of San Diego*,
    645 F.3d 1109 (9th Cir. 2011) .................................................... 9, 22

*Turner Broad. Sys. v. FCC*,
    512 U.S. 622 (1994) ............................................................ 9, 17, 18

*United States v. Alvarez*,
    132 S. Ct. 2537 (2012) ................................................................... 20

*United States v. Stevens*,
    559 U.S. 460 (2010) ....................................................................... 19

*Video Software Dealers Ass'n v. Schwarzenegger*,
    556 F.3d 950 (9th Cir. 2009) ..................................................... 18, 19

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ....................................................................... 19

*Winter v. NRDC*,
    555 U.S. 7 (2008) ..................................................................... 9, 21

*Wisc. Right to Life, Inc. v. Barland*,
    751 F.3d. 804 ........................................................................... 15, 16

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ....................................................................... 17

iv

# STATUTES

Beverly Hills, Cal., Mun. Code

    ch. 8 *et seq.* ................................................................................ 18

    § 1-8-1 ...................................................................................... 18

    § 1-8-2 ........................................................................................ 6

    § 1-8-5(C) .................................................................................... 6

    § 1-8-5(E) ..................................................................... 6, 8, 12, 15

    § 1-8-5(F) .............................................................................. 6, 18

    § 1-8-7(A) .................................................................................... 8

    § 1-8-7(B) .................................................................................... 8

    § 1-8-7(C) .................................................................................... 8

Cal. Code Regs. tit. 2, § 18247.5(c) ................................................. 5, 20

Cal. Elec. Code

    §§ 9201 *et seq.* ............................................................................ 3

    § 9215 ......................................................................................... 5

Cal. Gov't Code

    §§ 81000, *et seq.* ..................................................................... 3, 5

    § 82048.7 .................................................................................... 5

    § 84102(a) ................................................................................... 5

    § 84106 ....................................................................................... 5

    § 84107 ................................................................................... 5, 20

    § 84305 ....................................................................................... 5

    § 84503 ....................................................................................... 5

    § 84504 ....................................................................................... 5

    § 84507 ....................................................................................... 5

Cal., Mun. Code ch. 8 .......................................................................... 8

L.A., Cal., Mun. Code ch. 4, art. 9.7, § 49.7.28(C) (2012) ..................... 6

# CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ...................................................................*passim*

1

## OTHER AUTHORITIES

2

Victoria Talbot, *City To Present 30-Day Report on Hilton* Initiative,
BEVERLY HILLS COURIER (July 19, 2016)*, available at
http://bhcourier.com/beverly-hills-news-city-to-present-30-day-
report-on-hilton-initiative* .......................................................................................4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Communications with voters regarding ballot initiatives are "core political speech" under the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). "No form of speech is entitled to greater constitutional protection." *Id.* Plaintiff needs that protection immediately, because Defendant the City of Beverly Hills is demanding that Plaintiff set aside a huge portion of its campaign communications regarding a pending ballot initiative to carry a lengthy government-prescribed message that both completely overwhelms Plaintiff's own message to voters and taints that message with the City's subjective characterization of the initiative. The City's ordinance violates the First Amendment, both as applied to Plaintiff and on its face, and its application should be immediately enjoined.

Plaintiff is supporting a ballot initiative to amend a city zoning plan in Beverly Hills. Over the vocal opposition of the Mayor, Plaintiff succeeded in obtaining the requisite number of signatures to place the initiative on the November ballot. To encourage voters to support the initiative, Plaintiff is about to launch new direct mail, radio, and television ads. But now, the City of Beverly Hills is mandating through a local ordinance that Plaintiff set aside huge portions of its advertising for a lengthy *120-word* government-prescribed message, which includes a *64-word* subjective initiative "title" drafted by the City Attorney. The government message is so lengthy that Plaintiff is now completely foreclosed from using most typical forms of political advertising media. And the avenues to speak that remain are so burdened by the City's mandate that they are essentially worthless for persuading voters.

The City seeks through its ordinance to compel Plaintiff to include this 120-word government message in *14-point font* on all written advertisements, to read the same message aloud in any audio communications (including telephone calls), and to devote a remarkable *50%* of any video to displaying the message. The

1

1    government message is so voluminous that actual advocacy—the very point of the

2    constitutionally-protected      advertisements—becomes      either      impossible      or

3    ineffective.  For example, the required message completely prevents Plaintiff from

4    utilizing standard 30-second radio advertisements, because the government

5    message itself takes much longer than 30 seconds to say—even when read by a

6    professional.  The government message also effectively prevents Plaintiff from

7    using standard 4x6 direct mail post cards, because its text consumes *two thirds of*

8    *the space on the main side of the card*, overwhelming and leaving little room for

9    any other message.

10    The ordinance violates the First Amendment.  The ordinance and its

11    attendant risk of criminal liability are, right now, significantly burdening and

12    chilling Plaintiff's core political speech.  While reasonable and limited disclosure

13    and disclaimer requirements are permissible in many contexts, the government-

14    prescribed message here goes far beyond what any court has ever approved.  All

15    compelled disclosures and disclaimers on political advertising are, at a minimum,

16    subject to "exacting scrutiny" under the First Amendment.  As it is being applied to

17    Plaintiff, the ordinance flunks that test because the severe burdens it imposes

18    outweigh the government's minimal interest in forcing Plaintiff to communicate

19    the government's super-sized message.

20    The ordinance is also facially unconstitutional in at least one respect.

21    "Exacting scrutiny" only applies to compelled speech of *purely factual*

22    *information*.   The ordinance, however, is no ordinary factual disclosure or

23    disclaimer requirement.  It compels ballot committees to include on the face of

24    their political communications, among other things, a "title" drafted by the City

25    Attorney—but provides absolutely no standard to guide the City Attorney's in

26    drafting that "title."   As a result, the City Attorney has unfettered discretion to

27    compel a committee to repeat any description he pleases, such as the abusively

28    lengthy title at issue here or even a description that pejoratively characterizes the

2

1    initiative at issue.  This *subjective* title requirement is subject to and fails "strict
2    scrutiny," and in this respect the ordinance violates the First Amendment on its
3    face even aside from its severe impact on Plaintiff.

4        Because Plaintiff is likely to succeed on the merits and the equitable factors
5    tip sharply in its favor, the ordinance should be immediately enjoined.[1]

6                                    **BACKGROUND**

7    **A.      The Initiative**

8        The California Constitution reserves to the people the right to propose or
9    amend laws at both the state and local level.  In California, any citizen is eligible to
10   advance a proposed ballot initiative following specific procedures prescribed by
11   state law.  Cal. Elec. Code §§ 9201 *et seq.*

12       Plaintiff is a ballot measure "committee" organized and registered in
13   accordance with California's Political Reform Act of 1974, Cal. Gov't Code
14   §§ 81000, *et seq.*, and is formed in support of a ballot initiative that would amend
15   an existing city zoning plan (the Initiative).  (Declaration of Sean P. Welch
16   ("Welch Decl.") ¶ 3, filed herewith.)  That zoning plan—the "Beverly Hilton
17   Specific Plan"—was approved by the City in 2008.  It authorized on the site of the
18   iconic Beverly Hilton the construction of two new residential buildings, a Waldorf
19   Astoria hotel, and accessory structures.  (*Id.* ¶ 4.)  The Initiative would amend the
20   existing Beverly Hilton Specific Plan to allow the developer to combine the two
21   residential buildings into one taller building and create additional public spaces
22   that will benefit the surrounding area, offering the residents of Beverly Hills a new

23

24   [1]   Pursuant to Local Rule 7-19, Plaintiff states:  The Beverly Hills City Attorney is
25   Mr. Laurence S. Wiener, Esq.  Mr. Weiner's address is 355 South Grand Avenue,
26   40th Floor, Los Angeles, CA 90071-3101.  His telephone number is (213) 626-
     8484.  His e-mail address is lwiener@rwglaw.com.  Plaintiff has informed the City
27   Attorney of the timing and substance of this suit, and anticipates that Defendant
     will oppose Plaintiff's requested relief.  *See* Declaration of Sean P. Welch ¶ 31,
28   filed herewith.

                                          3

environmentally sensitive garden and open space.  (*Id.* ¶ 7.)  It is well known, and Plaintiff makes no effort to hide, that Plaintiff's primary financial support comes from the developer of the Beverly Hilton project.

The public benefits associated with a given development are almost always a significant factor considered by the ultimate decision-maker (here, the citizens of Beverly Hills) responsible for approving a proposed land use.  (Welch Decl. ¶ 8, 14).   And any successful local ballot initiative campaign requires substantial advertising and other grass-roots activity.  (*Id.* ¶ 14.)  To that end, Plaintiff has for months been engaged in an advertising campaign to highlight the benefits of the Initiative and in particular the publicly accessible garden it mandates.  (*Id.* ¶¶ 7, 14. )

Like with any issue of public importance, some citizens and government officials support the Initiative and others oppose it.  To say that the Mayor of Beverly Hills "opposes" the Initiative, however, is a gross understatement.  The Mayor has launched a very public, and at times very personal, campaign against Plaintiff, the developers of the Beverly Hilton, and others who support the Initiative.  As recently stated in the Beverly Hills Courier:

> Mayor John Mirisch has mounted a campaign against the initiative, arranging speaking engagements whenever possible, including at synagogues.  It is unprecedented for a mayor to take such a public position so far in advance to campaign against an issue.  Some in the community have questioned whether he has compromised the impartiality of the City Council.[2]

Despite the Mayor's opposition, Plaintiff was successful in obtaining enough signatures—from *18.9%* of the City's registered voters—to qualify the Initiative

---

[2] Victoria Talbot, *City To Present 30-Day Report on Hilton Initiative*, Beverly Hills Courier, July 19, 2016*, available at* http://bhcourier.com/beverly-hills-news-city-to-present-30-day-report-on-hilton-initiative.

4

1   for the November ballot.  (Welch Decl. ¶ 10); Cal. Elec. Code § 9214 (West 2001).

2   Because Plaintiff succeeded in obtaining the requisite number of signatures, the

3   Initiative was put before the City Council, which then had the option of voting to

4   adopt the measure outright or submitting it to the voters.  *Id.* § 9215.  On July 19,

5   2016, the City Council declined to adopt the measure and instead voted to submit it

6   to the voters.  (Welch Decl. ¶ 10).

7         Because the Initiative will now definitely appear on the November ballot,

8   Plaintiff is preparing to launch new advertisements to encourage voters to support

9   the  Initiative,  including  direct-mail,  radio,  television,  and  social  media

10  advertisements.  (Welch Decl. ¶ 15).

11  **B.    The City's Ordinance And Its Government-Mandated Message**

12        California's Political Reform Act requires certain information to appear on

13  all advertisements sent by a committee formed to support or oppose a ballot

14  measure  (whether  the  measure  is  a  state  or  local  one).   For  example,  any

15  advertisement sent by a committee (including mass mailings) must include the

16  name of the committee in at least 14-point font.  Cal. Gov't Code §§ 84504, 84507

17  (West 2012).  The committee must further identify the economic interests of all

18  donors of $50,000 or more, and list the top two such donors on the committee's

19  advertisements.    *Id.* §§ 84503, 84504.    A committee also must identify any

20  organization that acts as its "sponsor."  *Id.* §§ 82048.7, 84102(a), 84106.  And the

21  address of the committee must appear on the outside of all mass mailings, in at

22  least  6-point  font.   *Id.* § 84305.   In several weeks, the Los Angeles County

23  Registrar of Voters will assign the Initiative an objective identifier (a letter), which

24  state law will require Plaintiff to incorporate into its committee name.  *Id.* § 84107;

25  *see also* Cal. Code Regs. tit. 2, § 18247.5(c).  Plaintiff's political advertisements

26  will comply with these state-law requirements.  (Welch Decl. ¶ 28.)

27        California law also permits local jurisdictions to impose their own additional

28  requirements.  Some do.  The City of Los Angeles, for example, requires that the

5

1   names of "major funders" of at least $25,000 be included in the disclaimer—as

2   opposed to the $50,000 threshold set by state law.  L.A., Cal., Mun. Code ch. 4, art.

3   9.7, § 49.7.28(C) (2012).   By contrast, many surrounding cities including

4   Bakersfield, Anaheim, and Long Beach just defer to state law standards.

5          Beverly Hills has enacted an ordinance that significantly exceeds the state

6   law requirements (the Ordinance).  That Ordinance applies to Plaintiff now that the

7   City Council has voted to send the Initiative to the voters.  As relevant here, the

8   Ordinance applies to any advertisement[3] for or against a "City Ballot Measure,"

9   which is defined as "[a]ny initiative, referendum or city council sponsored measure

10  that is submitted solely to the voters of the city of Beverly Hills."  Beverly Hills,

11  Cal., Mun. Code ch. 8, § 1-8-2 (2012).

12         The Ordinance requires that every advertisement disclose, in descending

13  order by contribution amount, the identity of any person or entity who contributes,

14  either in cash or in kind, over $10,000.  *Id.* § 1-8-5(C).  The Ordinance requires

15  that the advertisement contain the statement "These donors are listed in descending

16  order of contribution amount."—even if, like here, there is only a single major

17  donor that must be disclosed.  *Id.* §§ 1-8-5(C), (E).  The Ordinance requires that

18  the advertisement state that "More current information regarding the sources of

19  funding for this election campaign is available at www.beverlyhills.org."  *Id.* §§ 1-

20  8-5(E).  And, finally, the Ordinance requires that the advertisement "contain the

21  official title of the city ballot measure, as provided by the city attorney."  *Id.* § 1-8-

22  5(F).

23         Under the Ordinance, the "official title" has no function other than being

24  included on the advertisement, and there is no standard provided to limit the City

25  _____

26  [3]  The Ordinance defines "advertisement" as "[a]ny general or public communication, including printed, mailed, telephonic, automated, and electronic

27  communications, which is authorized and paid for by a ballot measure committee for the purpose of supporting or opposing a city ballot measure."  Beverly Hills,

28  Cal., Mun. Code ch. 8, § 1-8-2 (2001).

6

1   Attorney's discretion in deciding what constitutes the "official title."  This final
2   requirement gives the City Attorney unfettered discretion to dictate the length and
3   content of the government-mandated message.  Here, the City Attorney adopted
4   the following lengthy official title: "An initiative measure to amend the Beverly
5   Hilton Specific Plan to combine the 8 story Wilshire condominium building with
6   the 18 story Santa Monica condominium building resulting in one 26 story
7   building with additional height and to replace the Wilshire building with 1.7 acres
8   of garden open space that is generally open to the public subject to reasonable
9   restrictions determined by the property owner."  (Welch Decl. ¶ 12).

10      When coupled with the Ordinance's other requirements, the following 120-
11  word message must be communicated in all of Plaintiff's political advertisements:

12      **This communication is presented and paid for by Residents for The**
13      **Beverly Hills Garden & Open Space Initiative, with major funding by**
14      **Oasis West Realty LLC / The Beverly Hilton.  These donors are listed in**
15      **descending order of contribution amount.  More current information**
16      **regarding the sources of funding for this election campaign is available**
17      **at www.beverlyhills.org. ("An initiative measure to amend the Beverly**
18      **Hilton Specific Plan to combine the 8 story Wilshire condominium**
19      **building with the 18 story Santa Monica condominium building**
20      **resulting in one 26 story building with additional height and to replace**
21      **the Wilshire building with 1.7 acres of garden open space that is**
22      **generally open to the public subject to reasonable restrictions**
23      **determined by the property owner.")**.

24  (*Id.* ¶ 13.)

25      For print, video, or email advertisements, this message must appear in 14-
26  point font.  Beverly Hills, Cal., Mun. Code ch. 8, § 1-8-5(E).  When an
27  advertisement is in audio format only (radio, telephonic, etc.), the full message
28  must be read aloud "so as to be clearly audible and understood by the intended

7

public and otherwise appropriately conveyed for the hearing impaired." *Id.*  All video advertisements (including television) must dedicate *50%* of their time to the disclaimer.  *Id.*  As described in detail below, the length of the mandated message effectively forecloses the use of the most common forms of political advertisements.  *Infra* at 17-20.

The Ordinance imposes *criminal* liability for willful violations, which are punishable by six months in county jail and/or by a fine of $1,000.00.  *Id.* § 1-8-7(B).  For violations by a ballot measure committee like Plaintiff, "the treasurer, any principal officers, and any person primarily responsible for the preparation of any advertisement may be liable for violations."  *Id.* § 1-8-7(A).  The Ordinance also contains a citizen-enforcement provision, enabling any resident to enforce the act civilly.  *Id.* § 1-8-7(C).

As a result of the massive government message that the Ordinance now requires on Plaintiff's advertisements, Plaintiff is holding off on distributing and placing any new political advertisements.  (Welch Decl. ¶ 26.)  If the Ordinance is enjoined, Plaintiff will immediately begin advertising again.  (*Id.* ¶ 27.)

## ARGUMENT

To protect its ability to engage in core political speech at a critical point in a time-sensitive campaign, Plaintiff seeks a temporary restraining order and preliminary injunction against the City's enforcement of the Ordinance.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  The standard for a temporary restraining order is the same.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are

8

1   threatened with infringement, at which point the burden shifts to the government to

2   justify the restriction" on speech and demonstrate that the plaintiff is unlikely to

3   succeed on the merits. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th

4   Cir. 2011). This Court should grant equitable relief here because Plaintiff amply

5   meets the "colorable" standard—the Ordinance clearly violates the First

6   Amendment—and the remaining factors all weigh heavily in its favor.

7   **I.   PLAINTIFF IS LIKELY TO SUCCEED ON ITS CLAIM THAT THE
        ORDINANCE VIOLATES THE FIRST AMENDMENT**

8

9       The speech at issue here seeks to encourage individuals to support a ballot

10  initiative. This is a context in which the First Amendment's protections are at

11  their zenith. "A person's First Amendment free speech right is at its highest when

12  that person engages in 'core political speech,' which includes issue-based

13  advocacy related to ballot initiatives." *Ariz. Students' Ass'n v. Ariz. Bd. of

14  Regents*, No. 13-16639, 2016 WL 3082698, at *6 (9th Cir. June 1, 2016) (citing

15  *McIntyre,* 514 U.S. at 347). The First Amendment's protections extend to

16  government efforts to compel speech, because "[a]t the heart of the First

17  Amendment lies the principle that each person should decide for himself or

18  herself the ideas and beliefs deserving of expression, consideration, and

19  adherence." *Turner Broad. Sys. v. FCC,* 512 U.S. 622, 641 (1994). The

20  Ordinance violates the First Amendment in at least two respects.

21      First, as applied here, the Ordinance's requirement to place an enormous

22  government message on the face of Plaintiff's political communications imposes

23  a sweeping—and indeed, unprecedented—burden on Plaintiff's political speech,

24  for some media precluding it entirely. Under exacting scrutiny—the *minimum*

25  standard applicable to any compelled political speech—the Ordinance cannot be

26  enforced against Plaintiff.

27      Second, the Ordinance's subjective title requirement is facially invalid in

28  all of its applications. That requirement compels all ballot measure committees

9

1    generally—and Plaintiff in particular—to communicate on the face of their

2    political advertisements a subjective message chosen by a City official, without

3    providing any standard to limit that official's discretion.  In Plaintiff's case, the

4    City is forcing Plaintiff to include on its advertisements the City Attorney's *64-*

5    *word* subjective characterization of the Initiative.  Strict scrutiny applies to this

6    aspect of the Ordinance, and the City cannot come close to satisfying that

7    standard here.

8    ## A.    The Ordinance Is Invalid As Applied Under Exacting Scrutiny Because It Severely Burdens Plaintiff's Political Speech

9

10        All disclaimer and disclosure requirements that apply to political speech

     must, *at a minimum*, satisfy "exacting scrutiny."  *Citizens United v. Fed. Election*
11
     *Comm'n*, 558 U.S. 310, 366-67 (2010).  This requires the City to demonstrate a
12
     "substantial relation" between the compelled speech requirements and a
13
     "sufficiently important" government interest that those requirements purport to
14
     serve.  *Id.*  To survive exacting scrutiny, "'the strength of the governmental interest
15
     must reflect the seriousness of the actual burden on First Amendment rights.'"
16
     *Family PAC v. McKenna*, 685 F.3d 800, 806 (9th Cir. 2011) (citation omitted).  A
17
     court, therefore, weighs the strength of the governmental interest against the
18
     burden on the right.  *See id.*  Only if the governmental interest outweighs the
19
     burden does the regulation survive.  As the City has applied it to Plaintiff, the
20
     Ordinance fails that test.
21
          In some contexts, like those involving speech favoring a particular candidate
22
     for office, disclosures and disclaimers are justified by weighty government
23
     interests like exposing potential *quid pro quo* corruption.  *See Buckley v. Valeo*,
24
     424 U.S. 1, 66-67 (1976).  The context here—issue advocacy concerning a ballot
25
     initiative—does not raise those sorts of concerns.  *See Citizens Against Rent*
26
     *Control v. City of Berkeley, Cal.,* 454 U.S. 290, 299 (1981).  Rather, the
27
     government's only possible interest here is informational—informing voters about
28

10

who is supporting and financing a particular initiative.  While that interest may be important enough to justify "modest burdens" on political speech, *see McKenna*, 685 F.3d at 808, it is not weighty enough to justify more serious burdens that actually chill political speech, *see Citizens United*, 558 U.S. at 369-71.  And such information rationales are at their weakest when used to justify compelled speech on the *face* of political communications, as opposed to *disclosures made to the government* which can then make the information publicly available.  *See McIntyre*, 514 U.S. at 348 ("The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit."); *ACLU of Nev. v. Heller*, 378 F.3d 979, 994 (9th Cir. 2004) (discussing the "inadequacy of a pure information rationale"); *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 540 n.15 (9th Cir. 2015) (en banc) (noting that interest in requiring disclosure "on the face of a non-governmental publication" is significantly weaker than that supporting disclosure on an "official election document").

The Ordinance is imposing on Plaintiff a burden far greater than any court has approved.  State law may legitimately mandate that Plaintiff refrain from speaking anonymously, but the City has gone well beyond that, requiring Plaintiff to convey an extraordinarily lengthy government message that stifles Plaintiff's own political message at a critical juncture in the electoral process.  This message is severely burdensome in multiple respects.  In print and video, the message must appear "in a conspicuous manner, in no less than 14-point type"; in video, it must appear for at least half of the advertisement's duration; and in an audio or telephonic format, it must be "spoken so as to be clearly audible and understood by the intended public."  Beverly Hills, Cal., Mun. Code ch. 8, § 1-8-5(E).  Thus defined, the government message utterly overwhelms—and in some media precludes—the political messages Plaintiff is attempting to convey.

11

1     Radio advertisements are the most obvious victim of the Ordinance's

2  overreach.  They are among the most common forms of political communication

3  used in municipal politics, and they are typically purchased and sold as 30-second

4  spots.  (Welch Decl. ¶ 18.)  That duration is generally considered most effective,

5  partly because it facilitates cost-effective repetition.  (*Id.*)  In keeping with that

6  strategy, wants to make 30-second radio ads a significant component of its

7  advertising strategy. (*Id.* ¶¶ 16, 18.)

8     The Ordinance, however, now functionally prohibits Plaintiff from airing

9  30-second radio ads, because it is impossible to recite the required disclaimer

10  with the clarity that the Ordinance requires in 30 seconds, even for radio

11  professionals.  (*Id.* ¶ 19.)  Thus, airing its 30-second ads would require Plaintiff to

12  purchase ads of *at least* 60 seconds, which significantly increases cost.  Even

13  using 60-second ads, Plaintiff's radio ads would achieve far less repetition (and

14  thus have far less reach) within the same budget.  (*Id.* ¶ 20)  As a result, the

15  Ordinance as a practical matter eliminates radio as an effective medium, seriously

16  inhibiting Plaintiff's ability to communicate its message.

17     Print advertisements would fare little better.  Those are produced in a

18  variety of sizes, but among the most common is a 4 x 6 post card which is

19  typically sent to voters via direct mail.  (*Id.* ¶ 23.)  Such post cards are a staple of

20  advertising campaigns in municipal elections, and Plaintiff has been making

21  extensive use of them as part of its campaign.  (*Id.*)  Like with 30-second radio

22  ads, however, the Ordinance's application essentially renders post cards useless.

23  Printing the full disclaimer in the 14-point font that the Ordinance requires would

24  occupy roughly *two thirds* of the space on the main side of the card.  (*Id.* ¶ 24.)

25  And because addressing information appears on the reverse side, there would be

26  little, if any, space left to communicate a message—much less to do so

27  effectively.  (*Id.*)  The example below illustrates the point. Figure 1 depicts a post

28

card that complies only with the requirements of state law; Figure 2 depicts a post card that complies with the Ordinance.  The difference speaks for itself.



Figure 1 (*Id.* ¶ 24, Ex. A.)



Figure 2 (*Id.*)

The Ordinance would also dramatically constrain Plaintiff's television ads. Like radio ads, television ads are typically run and sold in 30-second spots.  (*Id.* ¶ 21.)  Plaintiff has already written, produced, and aired 30-second television ads, and wants to continue to make use of television ads as part of its campaign.  (*Id.*) These ads are crucial in the context of *this* initiative, as they represent the best

13

1   opportunity for Plaintiff to provide the public a *visual* representation of its
2   proposed design, which will go a long way towards enlisting public support.  (*Id.*)
3   But superimposed on the ads, the required government message would occupy
4   such a substantial portion of the image as to nearly obscure the visual entirely.
5   (*Id.* ¶ 22.)  Moreover, because the Ordinance requires the government message to
6   appear for *half* of the ad's duration, it would turn a coherent 30-second visual
7   presentation into little more than a 15-second visual fragment.  A sample ad,
8   available at https://www.dropbox.com/s/flb8zj8wmz9s9nb/2016%20BH%20Discl
9   aimer%20final.mp4, illustrates the effect.  (*Id.*)

10      The City's interest here is not remotely sufficient to justify burdening
11  Plaintiff's advertising to this extreme degree.  Indeed, several components of the
12  government's lengthy message are either meaningless or redundant as applied to
13  Plaintiff.  For example, the Ordinance mandates the following sentence after listing
14  Plaintiff's major donors:   "[t]hese donors are listed in descending order of
15  contribution amount."  Beverly Hills, Cal., Mun. Code ch. 8, § 1-8-5(E).  Here,
16  however, Plaintiff has only a *single* donor that must be disclosed – "Oasis West
17  Realty LLC / The Beverly Hilton."  It serves no important purpose at all to require
18  an additional 10 words that are not even accurate.  Likewise, the City's "ballot
19  title"—in addition to being unconstitutionally subjective*, see infra* at 16-17—is
20  unnecessary in light of state law's existing requirement to include the ballot
21  initiative's objective identifier (once assigned) on the message.  *See supra* at 19-
22  20.  If the City feels it is necessary to include additional information about the
23  Initiative, it could, for example, maintain a website with all proposed initiatives,
24  their official objective identifier, and their descriptions.  That would be a simple
25  solution, since other parts of the Ordinance already require Plaintiff to include a
26  reference to the City's website.  Beverly Hills, Cal., Mun. Code ch. 8, § 1-8-5(E)
27  (requiring advertisement to state: "More current information regarding the sources
28  of funding for this election campaign is available at www.beverlyhills.org.").

14

1    There is no reason that the City could not establish a dedicated website that

2    contains *both* funding information and other information deemed important by the

3    City, like its ballot "title," thereby reducing the required government message to a

4    single sentence in length.  The City cannot justify the severe burdens associated

5    with the Ordinance's lengthy compelled message when it has significantly *less*

6    burdensome options that would serve its interests equally effectively.  *See Human*

7    *Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1010 (9th Cir. 2010); *see also Peel*

8    *v. Attorney Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 117 n.2

9    (1990) (Marshall, J., concurring in the judgment) (noting that, even in the

10   commercial context, a burdensome disclaimer cannot be required when a more

11   limited disclaimer would suffice).

12        The Seventh Circuit addressed a similar issue to the one here in *Wisconsin*

13   *Right to Life, Inc. v. Barland,* where it struck down certain political disclosure

14   provisions when Wisconsin "ma[de] no effort to explain" how its regulatory

15   scheme "satisfie[d] the close tailoring required … under exacting scrutiny."  751

16   F.3d 804, 842 (7th Cir. 2014).  Of particular note was the court's discussion of a

17   "wordy regulatory disclaimer" required for certain political advertisements.  *Id.* at

18   832.  Much like the government's message here, that disclaimer went "well beyond

19   the short disclaimer required by statute" and "simply repeat[ed]—in 50 extra

20   words—the very same point."  *Id.*    Indeed, Wisconsin conceded that the

21   disclaimer, which "consume[d] a significant amount of paid advertising time in a

22   broadcast ad," was unconstitutional as applied to a 30-second radio advertisement

23   (the only basis on which it was challenged).  But the court suggested it would not

24   be justified "in ads of *any* length" because Wisconsin had "not identified any

25   regulatory purpose for the extra words."  *Id.*

26        Other courts have rejected even far *less* burdensome disclaimer requirements

27   than those here—*including in the commercial context, where "exacting scrutiny"*

28   *does not even apply*.  For example, in *CTIA-The Wireless Ass'n v. City & County*

15

*of San Francisco*, a California district court held that a San Francisco ordinance requiring cell phone retailers to paste a 1 x 2.5 inch informational sticker on advertisements would "unduly interfere with the retailers' own right to speak to customers" by forcing them to "paste [San Francisco's] municipal message over the message of the retailers."  827 F. Supp. 2d 1054, 1063-64 (N.D. Cal. 2011), *aff'd* 494 Fed. Appx. 752 (9th Cir. 2012).  In *Entertainment Software Ass'n v. Blagojevich*, the Seventh Circuit struck down a state law requiring video games to have a 4-square-inch label indicating sexually explicit content because the "sticker cover[ed] a substantial portion"—approximately 10%—"of the box," and there was no explanation for "why a smaller sticker would not suffice."  469 F.3d 641, 652 (7th Cir. 2006).  In *Ibanez v. Florida Department of Business & Professional Regulation*, the Supreme Court concluded that a disclaimer required for use of a professional designation was unduly burdensome where the disclaimer's length effectively "rule[d] out" using the "designation on a business card or letterhead, or in a yellowpages listing."  512 U.S. 136, 146-147 (1994).  And in *Public Citizen, Inc. v. Louisiana Attorney Disciplinary Board*, the Fifth Circuit struck down disclaimer requirements for attorney advertising—including a large font size requirement—where they impaired the attorney's ability to advertise in certain ways.  632 F.3d 212, 228-29 (5th Cir. 2011).

As these cases demonstrate, because it substantially and unjustifiably impedes Plaintiff's political speech, the message compelled by the Ordinance is unduly burdensome as applied to Plaintiff, and is thus impermissible under the First Amendment.

**B.    The Ordinance's Subjective "Title" Requirement Independently Fails Strict Scrutiny**

Outside the commercial speech context, laws that compel speech are normally treated as presumptively impermissible content-based restrictions because "[m]andating speech that a speaker would not otherwise make

16

1  necessarily alters the content of the speech.'"  *Riley v. Nat'l Fed'n of the Blind*,

2  487 U.S. 781, 795 (1988).   Subject to only "narrow and well-understood

3  exceptions," "[l]aws that compel speakers to utter or distribute speech bearing a

4  particular message" are invalid unless they satisfy strict scrutiny.  *Turner Broad.*

5  *Sys.*, 512 U.S. at 641-42; *see also Wooley v. Maynard*, 430 U.S. 705, 717 (1977).

6      Although the First Amendment tolerates a narrow exception to that general

7  rule of strict scrutiny in the political context for reasonable regulations requiring

8  disclosure of *purely objective information* about the *origin* of political

9  advertising—such regulations are subject instead to "exacting scrutiny," *see*

10  *supra* at 10—that exception does not apply to the Ordinance's title requirement.

11  That requirement mandates that "every advertisement in support of, or opposition

12  to, one or more city ballot measures shall contain the official title of the city

13  ballot measure, *as provided by the city attorney*, in a clearly audible or legible

14  form."  Beverly Hills, Cal., Mun. Code ch. 8, § 1-8-5(F) (emphasis added).   In

15  effect, the Ordinance imposes a prior restraint on any political speech until the

16  City Attorney has set an "official title," a term which the Ordinance neither

17  defines nor provides *any* standard for establishing.   The City Attorney thus

18  exercises absolute discretion to determine the timing, content, and length of the

19  government-prescribed message.  In that respect, rather than compel a committee

20  to communicate purely objective factual information, the Ordinance requires

21  committees to communicate the City's preferred subjective speech.   Strict

22  scrutiny is therefore the appropriate standard.  *Cf. Riley*, 487 U.S. at 795; *Turner*

23  *Broad. Sys.*, 512 U.S. at 641-42; *see also CTIA–The Wireless Ass'n v. City &*

24  *Cnty. of S.F.*, 494 Fed. App'x. 752, 753 (9th Cir. 2012) (concluding that "any

25  governmentally compelled disclosures to consumers must be 'purely factual and

26  uncontroversial'").

27      To survive strict scrutiny, the subjective title requirement must be narrowly

28  tailored to serve a compelling government interest.  *See PG&E v. Pub. Utils.*

17

1    *Comm'n*, 475 U.S. 1, 19 (1986); *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226

2    (2015). And to satisfy the narrow tailoring test, the *government* must demonstrate

3    that it has chosen the "least restrictive means to further [its] articulated interest."

4    *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 958, 965 (9th Cir.

5    2009). The City cannot make that showing here. The Ordinance's subjective title

6    requirement is not narrowly tailored to serve *any* legitimate state interest, much

7    less a compelling one. None of the justifications appearing on the face of the

8    Ordinance—which all focus on eliminating corruption and illegal campaign

9    activity—appear at all related to the subjective title requirement. *See* Beverly

10    Hills, Cal., Mun. Code ch. 8, § 1-8-1 (2001).

11          The City may argue that the subjective title requirement serves the interest

12    of identifying for voters the specific initiative the advertisement is addressing. But

13    even if that interest were compelling, the subjective title requirement is not the

14    least restrictive means of achieving it for at least two reasons. First, the subjective

15    title requirement's lack of an objective standard to limit the City Attorney's

16    discretion is quintessential evidence that it is not narrowly tailored. *See Gaudiya*

17    *Vaishnava Soc'y v. City & Cnty. of S.F.*, 952 F.2d 1059, 1065 (9th Cir. 1990), *as*

18    *amended on denial of reh'g* (Dec. 26, 1991) ("As an application of the requirement

19    that restrictions be narrowly tailored, *a law cannot condition the free exercise of*

20    *First Amendment rights on the 'unbridled discretion' of government officials*."

21    (emphasis added)). Indeed, the "title" need not be a title at all, much less an

22    objective one: the lack of narrow tailoring thus impermissibly permits the City to

23    compel even pejorative, viewpoint-laden speech, rendering it facially invalid in

24    addition to invalid as applied to Plaintiff. *See City of Lakewood v. Plain Dealer*

25    *Publ'g Co.*, 486 U.S. 750, 756, 769 (1988) (invaliding speech-restrictive law on its

26    face where "[i]t is apparent that the face of the ordinance itself contains no explicit

27    limits on the mayor's discretion"); *United States v. Stevens*, 559 U.S. 460, 473

28    (2010) (statute is unconstitutionally overbroad if "a substantial number of its

1   applications are unconstitutional, judged in relation to the statute's plainly

2   legitimate sweep" (quoting *Wash. State Grange v. Wash. State Republican Party*,

3   552 U.S. 442, 450 n.6 (2008)); *PG&E*, 475 U.S. at 14-16 & n.12 (invaliding law

4   that compelled speech "biased against or [] expressly contrary to the [speaker's]

5   views"); *Frudden v. Pilling*, 742 F.3d 1199, 1207 (9th Cir. 2014) (similar); *see*

6   *also Video Software Dealers Ass'n*, 556 F.3d at 954 ("[W]e hold that the Act's

7   labeling requirement is unconstitutionally compelled speech under the First

8   Amendment because it does not require the disclosure of purely factual

9   information; but compels the carrying of the State's controversial opinion.").

10        Second, the subjective title requirement is not the least restrictive means of

11   informing voters of the initiative that an advertisement is about.  For example,

12   there is no reason that the City could not assign a short objective identifier—like a

13   letter or a number—and require committees to include that on their advertisements

14   so that voters could link a particular advertisement to a particular initiative.  *See*,

15   *e.g.*, *United States v. Alvarez*, 132 S. Ct. 2537, 2551 (2012) (finding that a statute

16   regulating speech was not necessary when an internet database provided an

17   alternative means to regulation); *Nat'l Ass'n for Gun Rights, Inc. v. Motl*, --- F.

18   Supp. 3d ----, No. CV 16-23-H-DLC. 2016 WL 3003201, at *9 (D. Mont. May 23,

19   2016) (finding that compelled political speech failed narrow tailoring requirement

20   where "access to this information already exists through a publicly supported

21   website").  Indeed, the Initiative will imminently be assigned such an objective

22   identifier by the County, which state law will *already require* Plaintiff to add to its

23   committee name and therefore include in its advertisements.  Cal. Gov't Code §

24   84107; *see also* Cal. Code Regs. tit. 2, § 18247.5(c).  The title requirement

25

26

27

28

19

1   therefore truly serves no purpose.  Tellingly, *the City itself does not even use the*
2   *so-called "official title" in its <u>own</u> communications about the Initiative*.[4]

3       Thus, the subjective title requirement fails strict scrutiny and is invalid under
4   the First Amendment.

5   **II.   THE REMAINING EQUITABLE FACTORS WEIGH HEAVILY IN**
        **PLAINTIFF'S FAVOR**
6
7       Plaintiff easily satisfies the three remaining elements for temporary and
    preliminary equitable relief:  it is "likely to suffer irreparable harm in the absence
8
    of preliminary relief"; that "the balance of equities tips in [its] favor"; and that "an
9
    injunction is in the public interest."  *Winter*, 555 U.S. at 20.
10
11       Plaintiff's demonstrated likelihood of success satisfies the "likely to suffer
    irreparable injury" requirement.  As described above, the improper application of
12
    the Ordinance to Plaintiff's advertisements will significantly curtail—and for some
13
    media, effectively nullify—its ability to communicate with voters.  *See Klein v.*
14
    *City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (explaining that harm to
15
    ability to communicate "is particularly irreparable where, as here, a plaintiff seeks
16
    to engage in political speech, as timing is of the essence in politics and a delay of
17
    even a day or two may be intolerable" (internal quotation marks omitted)).  There
18
    is just a little more than 3 months remaining until the election; every day that
19
    Plaintiff cannot effectively communicate increases the risk it will lose the election.
20
    It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal
21
    periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns,*
22
    427 U.S. 347, 373 (1976); *Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012).
23
    "To establish irreparable injury in the First Amendment context, [plaintiffs] need
24
    only 'demonstrate the existence of a colorable First Amendment claim.'"  *Brown v.*
25

26   _____

27   [4] *See*, *e.g.*,
    http://www.beverlyhills.org/cbhfiles/storage/files/26350769579156431/HiltonArgu
28   mentsDueDate.pdf.

                                          20

1   *Cal. Dep't of Transp.,* 321 F.3d 1217, 1225 (9th Cir. 2003) (quoting *Sammartano*

2   *v. First Judicial Dist. Court,* 303 F.3d 959, 973 (9th Cir. 2002)).  Plaintiff has done

3   so here.

4          The balance of equities in this case also tips sharply in Plaintiff's favor.

5   Under the circumstances of this hotly contested campaign, the hardship to Plaintiff

6   from enforcement of the Ordinance greatly outweighs any theoretical disruption to

7   the City's Ordinance.  *See Farris*, 677 F.3d at 868; *Klein,* 584 F.3d at 1208;

8   *Sammartano,* 303 F.3d at 973.  Indeed, the City can easily engage in its own

9   speech if necessary to provide any additional information to voters—as the Mayor

10  regularly does already.  The issuance of an injunction, moreover, is strongly in the

11  public interest. As the Supreme Court has recognized, speech relating to

12  governmental affairs, including that related to ballot measure elections, "is the type

13  of speech indispensable to decision making in a democracy." *First Nat'l Bank of*

14  *Bos. v. Bellotti*, 435 U.S. 765, 777 (1978); *see also Mills v. Ala.*, 384 U.S. 214,

15  218-19 (1966) ("[T]here is practically universal agreement that a major purpose of

16  [the First] Amendment was to protect the free discussion of governmental affairs.

17  This of course includes discussions of candidates, structures and forms of

18  government, the manner in which government is operated or should be operated,

19  and all such matters relating to political processes.").  Protecting First Amendment

20  rights and assuring the unfettered exchange of ideas in a political campaign is

21  paradigmatically in the public interest.  *Id.*; *Sammartano,* 303 F.3d at 974;

22  *Thalheimer,* 645 F.3d at 1129.

23                                    **CONCLUSION**

24          For the foregoing reasons, the requested TRO and preliminary injunction

25  should issue.

26

27

28

1    Dated: July 25, 2016       Respectfully submitted,

2

3                    /s/   Benjamin Hanelin

4                 LATHAM & WATKINS LLP

                    Benjamin Hanelin (S.B. No. 237595)

5                 Email: benjamin.hanelin@lw.com

6                 355 South Grand Avenue

                    Los Angeles, CA 90071-1560

7                 Telephone:  (213) 485-1234

8                 Facsimile:  (213) 891-8763

9                 Richard P. Bress (D.C. Bar No. 457504)

                     (*pro hac vice* pending)

10                Email: richard.bress@lw.com

                    Andrew D. Prins (D.C. Bar No. 998490)

11                (*pro hac vice* pending)

12               Email: andrew.prins@lw.com

13               555 11th Street NW, Suite 1000

                    Washington, DC  20004

14               Telephone:  (202) 637-3317

15               Facsimile:  (202) 637-2201

16               NIELSEN MERKSAMER

17              PARRINELLO GROSS & LEONI LLP

18             Christopher E. Skinnell (S.B. No. 227093)

                  Email: cskinnell@nmgovlaw.com

19             Sean P. Welch (S.B. No. 227101)

20            Email: swelch@nmgovlaw.com

                  2350 Kerner Boulevard, Suite 250

21             San Rafael, California 94901

22            Telephone:  (415) 389-6800

                  Facsimile:  (415) 388-6874

23

24               *Attorneys for Plaintiff*

25

26

27

28

                         22